On Rehearing.
Wyly, J.
In September, 1872, R. K. Callender, who had two notes made by Grolsan Brothers, for some seven hundred and seventy dollars each, payable to his own order, in the cash box of his partner Adam Hunter, gave the latter verbal authority, as he testifies, to indorse and collect the first note, payable twelfth January, 1873, but not the second, payable in July of the same year, and apply the proceeds to the payment of a certain draft drawn from Liverpool where both the partners then were, on the firm of Hunter & Callender at New Orleans, Louisiana.
j Hunter testifies that the verbal authority embraced the right to discount both of the notes for the purpose of providing funds, if necessary, to meet the time draft referred to. He, however, found means otherwise, and did not dispose of the notes of Callender for the purpose of providing funds to meet the payment of the Liverpool draft. Subsequently, to wit, early in January, 1873, a few days before the first note fell due, he discounted it with Jackson & Manson and put *313 the proceeds to the credit of Callender on the boohs of Hunter & Cal-lender, indorsing said note as follows : “ R. K. Callender, per Adam Hunter, Hunter & Callender.”
Callender returned from Liverpool about this time and made no objection to the indorsement,and discount of the note. Subsequently the partnership of Hunter & Callender was dissolved and the partners quarreled, Hunter refusing to return to Callender the second note, maturing in July, 1873, when it was demanded by the latter.
Afterward, to wit, on twenty-seventh June, 1873, a few days before the maturity of the last note, Hunter discounted it with Jackson & Manson who knew of the dissolution of the partnership, the indorsement being the same as that written on the'flrst note.
At the time of the discount of this note, Hunter, according to the import of his own evidence, was utterly without authority to do so. He had no right to indorse and discount a note belonging to Callender and payable to his order, it matters not how much Callender might owe the late firm of Hunter & Callender.
If Callender had given him verbal authority in Liverpool in September, 1872, as contended by the defendants and intervenors, the authority was revoked beyond doubt, before it was exercised. But from the evidence we are satisfied, without a revocation, Hunter had no authority to indorse and discount the note in question.
Take his own testimony in regard to the authority to indorse and discount this note, which is flatly contradicted by the evidence of Cal-lender, and it only shows this power was given, if necessary, to provide funds to meet the Liverpool .draft, which the firm of Hunter & Callender succeeded in providing for without the discount of Callender’s notes. Authority to indorse and discount a note for one purpose can not be extended to another.
As Hunter had no title to the note, his indorsees Jackson & Manson, acquired none, because when they discounted the note payable to the order of R. K. Callender without his indorsement, and on the indorsement of Adam Hunter, they were charged with notice of his want of authority to indorse and negotiate said note.
The fact that Callender had ratiñe'd the indorsement and discount of the first note, imposed no obligation on Callender to ratify the indorsement and discount of the second note, especially as his relations as partner with Hunter had ceased, to the knowledge of Jackson & Manson.
It is therefore ordered that our former judgment be set aside, and it is decreed that the judgment appealed from be affirmed with costs.